New York Oversea Co., Inc., Appellant, *v.* China, Japan and South America Trading Company, Ltd., Respondent.

First Department, July 6, 1923.

Sales — action for refusal to accept delivery of paper — evidence shows making of contract — rejection of goods on ground of price precludes defendant from raising other objections — "prevailing price" where there is but one source of supply is price asked by producer plus reasonable profit — measure of damages is difference between contract price and cost of production.

In an action to recover damages for the refusal on the part of a buyer of paper to accept delivery, a complete contract of sale is shown by the evidence, since it appears that the defendant ordered certain paper to be equal in every respect in quality, color and finish to the sample shown it; that the plaintiff accepted the order "as per our sample 878" and stated that "in making up these papers we will instruct our factory to match samples attached to your letter as closely as possible;" that the defendant thereafter in writing asked for minor changes in the making of the packages without objecting to the terms of plaintiff's acceptance.

The rejection of the paper by the defendant on the ground of price precludes it from now raising other grounds of objection to the detriment of the plaintiff.

The contract provided that the price should be " the prevailing prices," and since there was but one source of supply the prevailing price in reference to the paper must mean the price set by the manufacturer of the paper plus a reasonable profit.

The measure of plaintiff's damage is the difference between the contract price, that is, the manufacturer's price plus plaintiff's profit, and the cost of the production of the goods, which, in this case, as there was only one source of supply, was the price which the plaintiff was charged for the goods by the manufacturer.

APPEAL by the plaintiff, New York Oversea Co., Inc., from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 6th day of June, 1922, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, in favor of the plaintiff, and dismissing the complaint.

*Satterlee, Canfield & Stone* [*Harlan F. Stone* of counsel; *Karl T. Frederick* with him on the brief], for the appellant.

*Putney, Twombly & Putney* [*Walter H. Griffin* of counsel], for the respondent.

McAvoy, J.:

The claim of the plaintiff was that the defendant breached a contract, which had been made, in refusing to accept delivery of paper ordered under that contract. The contract between the parties is embodied in letters, one written by the defendant ordering certain quantity of paper " to be identical to sample # 878 shown in your sample booklet. We particularly caution you that this paper must be equal in every respect, in quality, color and finish, to that shown in your booklet."

The acceptance of plaintiff by letter on June 8, 1920, states that it will furnish goods " as per our sample # 878," and quotes an extract from a letter from the mill of plaintiff, or plaintiff's manufacturer, in which this sentence is used: " In making up these papers we will instruct our factory to match samples attached to your letter as closely as possible."

The plaintiff had a judgment in the Municipal Court in its favor for damages against the defendant for declining to receive the deliveries of paper. At the Appellate Term this judgment was reversed on the ground, as stated in the opinion (118 Misc. Rep. 744), that the exchange of letters evidenced no meeting of the minds of the parties, because it was there held that the order of purchase of goods " identical to sample " was not accepted by the statement " we will

instruct our factory to match samples as closely as possible." The ruling at the Appellate Term was that this was an acceptance subject to other terms and conditions than those mentioned in the offer, and was thus equivalent to an absolute rejection of the offer made by the plaintiff.

I think that a contract was made by the parties in the series of three letters, terminating in the one of June 8, 1920, for the purchase by defendant of the 1,000 reams of friction glazed paper as per sample. Whether or not the terms contained in plaintiff's two letters were a counter offer, such offer was accepted by the defendant, which through its actions must be deemed to have assumed the existence of the contract, and requested plaintiff to go forward with performance. Whether or not there was an acceptance of defendant's offer in its identic terms, and even if its letter be considered a counter offer, the conduct of defendant was such that its action must be interpreted as an acceptance by defendant of the counter offer. A few days after the receipt of the letter of June eighth defendant wrote and asked the plaintiff to make certain changes in the markings of the packages, which plaintiff replied to, confirming the fact that it had made these alterations on June sixteenth; and later defendant again asked for a slight change. Defendant's representative inquired of plaintiff's officer whether or not it would be possible for the plaintiff to furnish prices thirty days before manufacture. Plaintiff endeavored to secure this information from its manufacturer, and when it received advice as to the manufacturer's price, it added a reasonable charge for its own services and gave a final price to the defendants in August, 1920. Defendant replied to this letter on September fifteenth, and again on October fourth, without asserting that there was no contract, and without complaint that plaintiff was endeavoring to furnish an article not in accordance with defendant's order by sample, but claiming solely that the price named by plaintiff was not in accordance with their understanding. The letter of September fifteenth reads: " Referring to our orders of the above numbers under date of May 18th. The prices named by your letters of August 13th and 17th are not in accordance with the conditions of our orders. We, therefore, decline to accept delivery of paper unless tendered at prices conforming to the express stipulations of our orders."

It is uncontradicted that, after the defendant's order had been sent, before plaintiff's reply of June eighth, when plaintiff's representative told defendant's officer that the price prevailing (the term used in the contract or order) was the manufacturer's price, plus seller's profit, one Mr. Redding, defendant's representative,

said that this was satisfactory. The behavior of the defendant in its request for minor modifications, and its rejection of the contract on the ground of price, now hinders it, under established law, from basing its rejection of plaintiff's performance on other grounds not previously alleged. Its course of conduct has induced the plaintiff so to act that defendant may not now assert other grounds of objection to the detriment of plaintiff. The contract being thus established and performance pursuant to its terms having been commenced, it remains to be determined whether the prices rendered by plaintiff at the request of defendant were " prevailing " prices in strict accordance with the terms of the contract. It is obvious that " prevailing " prices, according to the nature of this contract, which was for paper not to be had except by special manufacture, did not relate to what is commonly or currently termed market price. The proof shows that there was during 1920 no such thing as a market price on this paper in 1,000 ream lots. While small quantities amounting to 50 reams of friction glazed paper were obtainable, the impossibility of purchase of lots of 1,000 reams was demonstrated. " Prevailing " price must then mean, since there was but one source from which to procure the paper, and it was understood that it required special manufacture, such price as was set by that source in the usual course of business, without undue enlargement of costs, and with a reasonable profit in addition.

The testimony shows the manufacturer's price, based on his cost of production, and the reasonableness and fairness of such price were confirmed by an expert witness who was not in the employ of plaintiff's manufacturer but was engaged in the same business with a certain concern manufacturing similar types of paper products. There is no direct contradiction of this testimony. Such proof as is offered opposing it relates to paper unlike the sample or only remotely resembling it, or to paper of the kind purchasable only in such small lots as might be fortuitously gathered. The price was, therefore, both according to the terms of the contract and the agreed meaning thereof, in discussions of the matter of price between the parties, the sum that was proven on the trial, and the damages were properly admeasured as the amount which plaintiff lost by reason of the defendant's breach of that contract, that is, the difference between the contract price, *i. e.*, the manufacturer's price, plus plaintiff's profit, and the cost of production of the goods, which in this case, as the plaintiff's manufacturer was the only one who could supply the goods, was the price which he charged the plaintiff. The paper was manufactured for plaintiff for ten dollars and twenty-eight cents per

ream. The plaintiff quoted eleven dollars and fifty cents, less two per cent of the gross price for early payment. This was admitted by defendant to be a fair profit. The damages here assessed at one thousand dollars are slightly less than the actual difference between cost and contract.

The sum awarded was proper, and the determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court reinstated and affirmed, with costs

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Determination of Appellate Term reversed, with costs, and judgment of the Municipal Court affirmed, with costs.